UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MICHELLE YANCY,              )
                                        )
            Plaintiff,       )
                                          )
            v.               )      No.  4:11CV185 TIA
                                          )
MICHAEL ASTRUE, Commissioner )
of Social Security,             )
                                          )
            Defendant.     )

## MEMORANDUM AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

This cause is on appeal from an adverse ruling of the Social Security Administration. The suit involves applications for Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income under Title XVI of the Act.  Claimant has filed a Brief in Support of his Complaint; the Commissioner has filed a Brief in Support of his Answer. The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

## I.     Procedural History

On September 25, 2007, Claimant filed Applications for Supplemental Security Income payments pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, et. seq. (Tr. 107-110) and for Disability Insurance Benefits under Title II of the Act, 42 U.S.C. §§ 401 et. seq. (Tr. 99- 106, 112-16)[1] alleging disability since January 1, 2007 due to morbid obesity, knee and back pain, depression, anxiety, high blood pressure, and thyroid condition.  (Tr. 51, 147).  The applications were denied (Tr. 51-56), and Claimant subsequently requested a hearing before an

---

[1]"Tr." refers to the page of the administrative record filed by Defendant with its Answer. (Docket No. 11/filed April 13, 2011).

Administrative Law Judge ("ALJ"). (Tr. 59-63). On December 2, 2008, a hearing was held

before an ALJ. (Tr. 22-47). Claimant testified and was represented by counsel. (Id.). In a

decision dated February 5, 2009, the ALJ found that Claimant had not been under a disability as

defined by the Social Security Act. (Tr. 6-21). After considering counsel's brief in support, the

Appeals Council denied Claimant's Request for Review on December 8, 2010. (Tr. 1-5, 97).

Thus, the ALJ's decision is the final decision of the Commissioner.

## II.    Evidence Before the ALJ

### A.  Hearing on December 2, 2008

#### 1.  Claimant's Testimony

At the hearing on December 2, 2008, Claimant testified in response to questions posed

by the ALJ and counsel. (Tr. 23-47). Claimant testified that she lives in a home with her husband

and one of her sons, age three. (Tr. 25). Claimant has her GED but no additional training. (Tr.

25-26). Claimant stands at six feet two and a half inches and weighs 399 pounds. (Tr. 29).

Claimant alleges that degenerative disc disease, and hypothyroidism, both knees, to be her

disabling impairments. (Tr. 30).

Dr. Krasnoff has been her treating physician for five years. (Tr. 30). Claimant testified

that no doctor has treated her left knee pain other than the consultative examiner. (Tr. 31). As

treatment for her left knee, Dr. Krasnoff has prescribed Ibuprofen as needed. Claimant takes

medication for her hypothyroidism. (Tr. 31). Claimant started seeing Dr. Layla Ziaee in July

2008. (Tr. 32). As treatment, Dr. Ziaee prescribed increased the dosage of her medication

prescribed by her treating doctor. Her doctor started prescribing Claimant an antidepressant in

February 2007. (Tr. 32). Although the medication helped initially, Claimant testified that the

medication stopped helping and the doctor referred her for treatment by Dr. Ziaee. (Tr. 33). Claimant testified that Dr. Ziaee increased the dosage of her medication and this has helped although she has good days and bad days. Dr. Ziaee treats Claimant with medication management and counseling every three months. The only pain medication Claimant takes is Ibuprofen. (Tr. 33). Claimant's knee pain is okay so long as she does not sit in one position for too long. (Tr. 45). Claimant can sit longer than she can stand before experiencing back pain. (Tr. 45-46). Claimant testified that she has no side effects from any of her medications. (Tr. 46).

On two occasions during the hearing, Claimant asked the ALJ if she objected to her standing. (Tr. 28, 33).

With respect to activities of daily living, Claimant testified that after waking up at 7:00, she wakes up her three-year old son, dresses him and fixes breakfast. (Tr. 34). Claimant takes him to preschool four days a week. (Tr. 35). After she picks him up from preschool, Claimant fixes sandwiches for lunch. (Tr. 35). Claimant plays with her son after lunch either playing with blocks or the Leapfrog cassette, while either sitting on the floor and lying down. (Tr. 35-36). Claimant will take a nap with her son in the afternoon. (Tr. 36). Claimant cannot stand up when washing the dishes so she sits in a rolling chair. Claimant's husband has taken over the laundry duties inasmuch as she can no longer go down the stairs. (Tr. 36). Claimant vacuums once a week. (Tr. 37). Claimant testified that she can do any low dusting by moving around in a wheeled chair. Outdoor activities include going outside and sitting in the sandbox and playing in the sand with her son or watching her son ride his bike. (Tr. 37). The family goes heavy grocery shopping twice a month. (Tr. 37-38). Claimant drives to take her son to school or for an emergency. (Tr. 38). Claimant checks her email on the computer and watches two hours of

television.  (Tr. 39).

Claimant testified that she can lift on average five pounds, the most ten pounds.  (Tr. 40).
Claimant can sit for ten to twenty minutes because her pinched sciatic nerve is pressing on a disc
in her back causing pain and numbness in her leg.  (Tr. 41).  The ALJ directed counsel to update
the medical file within three weeks of hearing, because Claimant in her testimony made allegations
not supported by the medical record.  (Tr. 42).  Claimant can stand for ten minutes, and then she
experiences numbness in her leg.  Claimant can walk for five to ten minutes or a city block.
Although her doctor has requested Claimant to walk, her pain prevents Claimant from walking for
any length of time.  (Tr. 42).

When working as a park counselor and a latchkey teacher, Claimant lifted ten pounds.
(Tr. 26).  On occasion, Claimant lifted one of the children in the latchkey program.  (Tr. 27).  As
a dispatcher, Claimant completed a two-week training program learning how to dispatch the
burglar and fire alarms through the computer system and how to dispatch the authorities when
needed.  (Tr. 28).  Claimant stopped working in April 2005 due to her pregnancy.  (Tr. 43).

Claimant determined January 2007 to be her date of disability, because her knees and back
were not getting better, and she experienced more difficulties doing any daily activities.  (Tr. 43).
Claimant testified that she could not return to the dispatcher job due to the stress of the job.  (Tr.
43).  Because she could not sit or stand for long, Claimant could not work the dispatcher job.
(Tr. 44).  Claimant testified that she cannot go down a flight of stairs.  Claimant cannot bend or
kneel.  (Tr. 44).

Prior to her pregnancy, Claimant weighed about 320 pounds.  (Tr. 45).  Claimant
attributed her weight increase to her depression and overeating or her thyroid not being properly

regulated. Claimant's treating doctor is not able to weigh her during an office visit, because her weight exceeds the scale's capacity. (Tr. 45).

### 2. Open Record

A review of the record shows that counsel submitted the additional medical records as requested by the ALJ to the ALJ before she issued a decision denying Claimant's claims for benefits. (Tr. 42, 223-48).

## III. Medical and Other Records

The MRI of Claimant's right knee performed on August 19, 1996 showed a bucket handle tear middle third of the medial meniscus with small knee joint effusion. (Tr. 226).

The MRI of Claimant's lumbar spine performed on June 2, 2001 showed degenerative disc disease at L4-5 and L5-S1 and bulging of the disc at L5-S1. (Tr. 224). The MRI also showed no herniated disc or spinal stenosis. (Tr. 224).

On February 20, 2002, Dr. Mark Krasnoff treated Claimant for her hypertension. (Tr. 175). In a follow-up visit on April 10, 2002, Claimant reported her mood and anger both better after starting Lexapro. (Tr. 175). Dr. Krasnoff noted Claimant's hypertension to be okay. (Tr. 175).

In an undated and incomplete evaluation form, Claimant reported her pain starting in June 1999. (Tr. 229-37). Claimant's lower back and pinched nerve are the sources of her pain. (Tr. 229). Claimant's pain starts after she stands or sits for more than five minutes. Her pain started after she fell on wet grass. Claimant reported seeing ten healthcare providers to treat her pain in the last year. At the time of the evaluation, Claimant's pain was at a level two out of ten. (Tr. 229). Claimant's pain starts in her lower back. (Tr. 230). Exercising, walking, standing, sitting

and climbing stairs increase her pain. (Tr. 232). The chiropractic treatment helped ease the pressure at the time of the visit. (Tr. 233). Claimant listed Ibuprofen as the medication she has taken for her pain. (Tr. 235). Claimant reported having knee surgery in January 1997. (Tr. 235). At the time of the evaluation, Claimant was working as a dispatcher. (Tr. 236). Claimant reported smoking one package of cigarettes. (Tr. 237). Claimant reported not being able to walk because of her pinched nerve. (Tr. 237).

In the Disability Report - Adult, Claimant reported that she stopped working on April 25, 2005 after being placed on bed rest for her pregnancy. (Tr. 147). From 1998- April 25, 2005, Claimant worked in customer service at an alarm company monitoring residential fire alarms and dispatching authorities. (Tr. 148). The job required Claimant to walk two hours, stand for two hours, and sit for six hours and lift no more than twenty pounds and did not require any technical knowledge or skills. (Tr. 148).

On December 1, 2005, Claimant reported no change. (Tr. 177). Dr. Krasnoff diagnosed Claimant with severe hypothyroidism and increased her medications. (Tr. 177).

Claimant cancelled her appointment with Dr. Krasnoff on January 5, 2006. (Tr. 177).

On March 10, 2006, Dr. Krasnoff treated Claimant for hypertension and hypothyroidism. (Tr. 178). Claimant returned for a follow-up visit on April 20,2006 and reported her energy being better. (Tr. 178). Dr. Krasnoff noted that Claimant should return for follow-up treatment in three to four months if needed. (Tr. 180).

In the treatment note of July 20, 2006, a notation is made regarding Claimant being notified by mail of her missed appointment with Dr. Mark Krasnoff. (Tr. 175).

In an office visit on February 20, 2007, Dr. Krasnoff treated Claimant's hypertension and

prescribed medications. (Tr. 175). In the April 10, 2007, Dr. Krasnoff noted Claimant's mood and anger to be improved taking Lexapro, and her hypertension to be okay. (Tr. 175). On July 5, 2007, Claimant canceled her appointment. (Tr. 176).

On August 24, 2007, Claimant reported knee and back pain. (Tr. 176). Dr. Krasnoff diagnosed Claimant with degenerative disc disease, degenerative joint disease of the knee, morbid obesity, and found Claimant's mood to be fair. On September 18, 2007, Claimant reported bilateral knee pain. Dr. Krasnoff prescribed Ibuprofen. (Tr. 176).

In the Function Report Adult - Third Party completed on October 19, 2007, Claimant's husband reported his wife's daily activities included taking care of their two-year old son, cooking meals, watching television, and playing computer games. (Tr. 121). Claimant vacuums and washes dishes while sitting in a chair. (Tr. 123). Making hand-tied blankets is listed as Claimant's hobby. (Tr. 125). Claimant's husband indicated that Claimant cannot lift very much; she can only take one step at a time when walking up or down stairs; she cannot squat or kneel; she cannot stand; and she can only walk a few feet before experiencing pain. (Tr. 126). Claimant wears a brace/splint. (Tr. 127).

In the Function Report Adult completed on October 20, 2007, Claimant reported taking care of her two-year old son as her daily activities. (Tr. 130). Claimant plays on the floor with her son and his toys. (Tr. 130). Claimant takes her son outside and sits down while he plays outside. (Tr. 137). While her son naps in the afternoon, Claimant checks her emails, surfs the internet, and watches television. (Tr. 137). Claimant fixes meals each day and fixing dinner can take one to two hours depending upon the meal prepared. (Tr. 132). Sitting down Claimant can vacuum and wash the dishes. (Tr. 132). Claimant reported she can stand but not for long; she

can lift approximately twenty pounds, she cannot squat, kneel, or climb; and she can walk for approximately ten to fifteen minutes. (Tr. 135). Claimant wears a brace on both knees. (Tr. 136).

In the Report of Contact dated November 7, 2007, Claimant reported taking medications for depression and anxiety, and the medications are working and have changed her in a good way. (Tr. 153). Claimant's hypertension is noted as being currently controlled by two medications. Her thyroid is noted as being under control. (Tr. 153).

On November 29, 2007, Dr. Stanley London completed an orthopedic evaluation on referral by Disability Determination. (Tr. 185). Claimant reported falling and injuring her back five years earlier and x-rays revealed a pinched nerve. Claimant had been taking medications, muscle relaxants, and anti-inflammatory medications and fairing reasonably well until her pain started radiating in her back six months earlier. Claimant has trouble with her knees. Claimant reported Ibuprofen helping some and standing increases her pain. (Tr. 185). Claimant can walk short distances and sit for twenty minutes. (Tr. 185-86). Claimant reported taking care of her two-year old son as her daily activities. (Tr. 186). Dr. London observed Claimant to walk slowly in part because of her weight and has trouble squatting. Dr. London noted that Claimant can heel and toe walk and hop. Dr. London observed Claimant to have some difficulty getting on and off the examination table at least in part because of her back and weight. Examination showed Claimant to have hypesthesia all through her left leg and straight leg lifting limited on both sides and producing pain in her back. Dr. London noted tenderness in her right lower back. Examination of Claimant's left knee showed a full range of motion and some tenderness. Examination of her right knee showed some significant crepitation under her patella with some

patellar tenderness and relatively full range of motion. (Tr. 186). In the clinical impression, Dr. London noted low back pain, probable disc disease, right knee probable chondromalgia of her patella, left knee pain with moderate degenerative arthritis and hypertrophic changes, and morbid obesity. (Tr. 186-87). The x-ray of Claimant's left knee showed moderate degenerative and hypertrophic changes throughout left knee joint. (Tr. 188).

In the Psychiatric Review Technique dated December 13, 2007, Dr. Kyle DeVore, a PhD, found Claimant to have an affective disorder, depression, but the impairment to be nonsevere. (Tr. 191-201). With respect to functional limitations, Dr. DeVore determined Claimant to have a mild limitations in activities of daily living, difficulties in social functioning and maintaining concentration, persistence, or pace. (Tr. 199).

The non-examining consultant, Tereasa Davenport, with the Missouri Section of Disability Determination, completed a Physical Residual Functional Capacity Assessment ("PRFCA") on December 14, 2007. (Tr. 202). Ms. Davenport listed Claimant's primary degenerative arthritis of left knee and obesity and her secondary diagnosis to be hypertension and hypothyroidism. (Tr. 202). The examiner indicated that Claimant can occasionally lift ten pounds, frequently lift less than ten pounds, and stand and walk at least two hours in an eight-hour workday. (Tr. 203). The consultant noted that Claimant can sit about six hours in an eight-hour workday and has limited capacity to push and/or pull. (Tr. 203). The consultant opined that Claimant is morbidly obese at 399 pounds and reasonable to expect some knee and back pain. (Tr. 204). The consultant found that Claimant is capable of performing no more than sedentary activities, and her weight further restricts her activities. (Tr. 204). The consultant noted Claimant's postural limitations to be limited to never climbing ladder/rope/scaffolds, balancing,

crouching, or crawling, and occasionally when climbing ramp/stairs, stooping, and kneeling. (Tr. 205). The examiner indicated that Claimant has no established visual, manipulative, communicative, or environmental limitations. (Tr. 205-06). In support, the examiner noted the function reports completed by Claimant where she reported caring for her two-year old son, cooking food, and shopping twice a week. (Tr. 207).

In the New Patient Evaluation dated July 11, 2008, Dr. Layla Ziaee evaluated Claimant on referral by Dr. Krasnoff. (Tr. 221). Claimant reported not having seen a doctor for psychiatric treatment since 1988. Claimant had been taking Prozac 20mg for a year. Claimant indicated that she filed an appeal after being denied social security disability. (Tr. 222). Mental status examination showed Claimant to be anxious and sad. (Tr. 222). Dr. Ziaee included in her diagnosis depression and anxiety, obesity, hypertension, and hypothyroid. Dr. Ziaee increased Claimant's Prozac to 40mg. (Tr. 222). On August 8, 2008, Claimant reported the Prozac helping somewhat by not becoming so overwhelmed. (Tr. 220). Dr. Ziaee continued Claimant's medication regime of Prozac 40 mg. (Tr. 220). In a follow-up visit on September 19, 2008, Claimant reported being more frustrated by situations and experiencing stress about financial issues. Claimant tolerated her dosage increase and reported no side effects from the medication. Dr. Ziaee increased her Prozac dosage to 60mg and scheduled the next appointment in three months. (Tr. 219).

In the Physical Residual Functional Capacity Questionnaire dated September 19, 2008, Dr. Krasnoff noted he treated Claimant on October 25, 2007 and September 19, 2008. (Tr. 214). His diagnoses included hypertension, hypothyroidism, degenerative joint disease, and severe weight problem. Dr. Krasnoff noted Claimant to have tenderness, and back and knee pain. (Tr.

214).  Dr. Krasnoff opined that during a typical workday Claimant's pain would occasionally/frequently be severe enough to interfere with attention and concentration needed to perform simple work tasks.  (Tr. 215).  Dr. Krasnoff found that Claimant would be capable of performing low stress jobs.  Dr. Krasnoff noted that Claimant could walk 2-3 city blocks, sit 15 to 20 minutes, and stand for 5 minutes.  (Tr. 215).  In an eight-hour workday, Claimant can stand/walk less than 2 hours and sit about 4 hours and needs 10 periods of 10 minute walking around during the workday.  (Tr. 216).  Claimant's position must permit her to shift positions at will from sitting, standing, or walking.  Dr. Krasnoff further indicated that Claimant would need to take three unscheduled breaks during an eight-hour workday.  Dr. Krasnoff noted that when engaging in occasional standing/walking Claimant uses a pull-on knee brace.  With respect to lifting, Dr. Krasnoff found that Claimant can frequently lift less than ten pounds and rarely lift ten and twenty pounds. (Tr. 216).  Claimant can occasionally twist and stoop, rarely climb stairs, and never crouch/squat and climb ladders.  (Tr. 217).  Dr. Krasnoff found that Claimant's impairments would produce good and bad days causing Claimant to be absent from work about four days each month.  (Tr. 217).  Dr. Krasnoff opined that approximately March 2007 to be the earliest date Claimant's limitations applied.  (Tr. 218).

In the Mental Impairment Questionnaire dated September 29, 2008, Dr. Layla Ziaee noted she treats Claimant monthly for her major depressive disorder with  medication management of her Prozac prescription.  (Tr. 208).  Dr. Ziaee noted Claimant to have a minimal response and her prognosis to be fair.  (Tr. 208).  Dr. Ziaee found Claimant unable to meet competitive standards in the following areas: remembering work-like procedures, maintaining attention for a two hour segment, performing a consistent pace without unreasonable number of rest periods, and dealing

with normal work stress. (Tr. 209). With respect to functional limitations, Dr. Ziaee found Claimant to have moderate functional limitations the restriction of activities of daily living; difficulties in maintaining social functioning; difficulties in maintaining concentration, persistence or pace; and episodes of decomposition. (Tr. 212). Dr. Ziaee opined that Claimant's impairments or treatment would cause her to miss more than four days per month of work, and her impairment is expected to last at least twelve months. (Tr. 213).

## IV. The ALJ's Decision

The ALJ determined that Claimant met the insured status requirements of the Social Security Act through December 31, 2010. (Tr. 11). The Claimant has not engaged in substantial gainful activity since January 1, 2007, the alleged onset date. The ALJ found that Claimant has the following severe impairments: lumbar degenerative disc disease, bilateral degenerative changes to her knees, obesity, and depression. Next, the ALJ found that Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 11). After careful consideration of the entire record, the ALJ found that Claimant has the residual functional capacity to perform the full range of unskilled light work where she would be expected to understand, remember and carry out simple, routine and repetitive work involving simple 1 and 2 step instructions and non-detailed tasks, to maintain concentration and attention in 2-hour segments over an 8-hour period, and to demonstrate adequate judgment and make adequate decisions. (Tr. 14).

The ALJ found that although Claimant's medically determinable impairments could be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the

residual functional capacity assessment. (Tr. 17). In support, the ALJ cited to Claimant's hearing testimony regarding her inability to lift more than ten pounds occasionally and no more than five pounds regularly. The ALJ noted that at the time of the hearing, her son weighed 39 pounds. The ALJ noted that Claimant was not able to answer her questions regarding how Claimant was able to change her son's diapers or lift him in and out of the highchair or a car seat if Claimant could not lift more than ten pounds. The ALJ also noted that Claimant also testified that she would get down on the floor and play with her son as another activity incompatible with the limitations asserted by Claimant. The ALJ opined "[i]t is difficult to find the claimant to be particularly credible when she reports that she performs one activity that she then reports that she is incapable of performing." (Tr. 17).

The ALJ opined that Claimant would be able to perform work activity requiring her to occasionally lift and carry objects weighing twenty pounds, regularly lifting objects weighing ten pounds, and to sit, stand and walk, off and on, for up to six hours each in a regular eight-hour workday. (Tr. 19). The ALJ found that Claimant is able to perform her past relevant work as a customer service representative and dispatcher. (Tr. 19). Claimant date of birth is February 14, 1971 and so she was thirty-five years old on the alleged disability onset date. (Tr. 20). The ALJ noted that Claimant has at least a high school education and to be able to communicate in English. Transferability of job skills is not an issue inasmuch as Claimant's past relevant work is unskilled. Considering Claimant's age, education, work experience, and residual functional capacity, the ALJ opined there are jobs existing in significant numbers in the national economy that Claimant can perform. Accordingly, the ALJ found that Claimant has not been under a disability from January 1, 2007, through the date of this decision. (Tr. 20).

## V. Discussion

In a disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability. <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1217 (8th Cir. 2001). Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). Additionally, the claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); <u>see</u> <u>also</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an ALJ in determining whether an individual is disabled. First, the ALJ must determine whether the individual is engaged in "substantial gainful activity." If she is, then she is not eligible for disability benefits. 20 C.F.R. § 404. 1520(b). If she is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant is not found to have a severe impairment, she is not eligible for disability benefits. If the claimant is found to have a severe impairment the ALJ proceeds to step three in which he must determine whether the impairment meets or is equal to one determined by the Commissioner to be conclusively disabling. If the impairment is specifically listed or is equal to a listed impairment,

the claimant will be found disabled.  20 C.F.R. § 404.1520(d).  If the impairment is not listed or is

not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the

claimant is capable of doing past relevant work.  If the claimant can still perform past work, she is

not disabled.  20 C.F.R. § 404.1520(e).  If the claimant cannot perform past work, the ALJ

proceeds to step five in which the ALJ determines whether the claimant is capable of performing

other work in the national economy.  In step five, the ALJ must consider the claimant's "age,

education, and past work experience."  Only if a claimant is found incapable of performing other

work in the national economy will she be found disabled.  20 C.F.R. § 404.1520(f); see also

Bowen, 482 U.S. at 140-41 (explaining five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be

affirmed if they are supported by "substantial evidence on the record as a whole."  Pearsall, 274

F.3d at 1217.  Substantial evidence has been defined as "less than a preponderance, but enough

that a reasonable mind might accept it as adequate to support a decision."  Id.  The court's review

"is more than an examination of the record for the existence of substantial evidence in support of

the Commissioner's decision, we also take into account whatever in the record fairly detracts

from that decision."  Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).  The Court will

affirm the Commissioner's decision as long as there is substantial evidence in the record to

support his findings, regardless of whether substantial evidence exists to support a different

conclusion.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative

record and consider:

1.      The credibility findings made by the ALJ.

2.       The claimant's vocational factors.

3.       The medical evidence from treating and consulting physicians.

4.       The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.

5.       Any corroboration by third parties of the claimant's impairments.

6.       The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting

Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The ALJ's decision whether a person is disabled under the standards set forth above is conclusive upon this Court "if it is supported by substantial evidence on the record as a whole." Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. 2009) (quoting Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008)). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." Wiese, 552 F.3d at 730 (quoting Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004)). When reviewing the record to determine whether the Commissioner's decision is supported by substantial evidence, however, the Court must consider evidence that supports the decision and evidence that fairly detracts from that decision. Id. The Court may not reverse that decision merely because substantial evidence would also support an opposite conclusion, Dunahoo v. Apfel, 241 F.3d 1033, 1037 (8th Cir. 2001), or it might have "come to a different conclusion." Wiese, 552 F.3d at 730. Thus, if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, the [Court] must affirm the agency's decision." Wheeler v. Apfel, 224 F.3d 891, 894-95 (8th Cir. 2000). See also Owen v. Astrue, 551 F.3d 792,

798 (8th Cir. 2008) (the ALJ's denial of benefits is not to be reversed "so long as the ALJ's decision falls within the available zone of choice") (internal quotations omitted).

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ failed incorporate the physical and mental demands of her past relevant work. Next, Claimant contends that the ALJ failed to elicit vocational expert testimony to determine the effect of the assessed limitations on her occupational base. Claimant further contends that the ALJ failed to include the limitations suggested by two doctors when formulating her RFC.

A.      Past Relevant Work

The ALJ's determination that Claimant can return to her job as a customer service representative and dispatcher with a limitation to "simple, routine and repetitive work involving simple 1 and 2 step instructions and non-detailed tasks." (Tr. 14). An ALJ may find the claimant able to perform past relevant work if the claimant retains the ability to perform the functional requirements of the job as she actually performed it or as generally required by employers in the national economy. Samons v. Astrue, 497 F.3d 813, 821 (8th Cir. 2007) (citing Martin v. Sullivan, 901 F.2d 650, 653 (8th Cir. 1990)). According to the Secretary's interpretation of past relevant work,

> [A] claimant will be found to be "not disabled" when it is determined that he or she retains the [residual functional capacity] to perform: 1. The actual functional demands and job duties of a particular past relevant job; or 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

20 C.F.R. § 404.1520(e). Section 404.1520 sets out a two part test. If the claimant is able to perform under either prong of the test, the claimant is not disabled. See Martin, 901 F.2d at 653

(holding that a claimant who cannot perform a particular past job may still be able to perform past relevant work under the second prong of the test).

The regulations refer to The Dictionary of Occupational Titles ("DOT") as a resource in determining the duties of a claimant's past relevant work. Claimant relies on the DOT in contending that she cannot perform the demands of either the dispatcher or customer service jobs as defined in the DOT, because both jobs exceed her capacity for unskilled work. Nonetheless, Claimant must also be able to prove she cannot perform her past relevant work as she actually performed the jobs. See Lowe v. Apfel, 226 F.3d 969, 973 (8th Cir. 2000) ("Where the claimant has the residual functional capacity to do either the specific work previously done or the same type of work as it is generally performed in the national economy, the claimant is found not to be disabled."). With respect to Claimant's past work as a dispatcher/customer service representative, Claimant testified the job required a two-week training course. Unskilled work is defined as any job that can be learned in less than thirty days. 20 C.F.R. § 404.1568(a) (unskilled work involves little or no judgment to do simple duties that can be learned on the job in a short period of time - usually thirty days). Claimant described the job as requiring sitting most of the day, lifting no more than twenty pounds, and no technical knowledge or skills. Accordingly, substantial evidence in the record exists that Claimant can perform her past work duties as a dispatcher and customer service representative as actually performed, regardless of which DOT classification is applied. Thus, the undersigned finds that the ALJ did not err in determining that Claimant could return to her past relevant work.

B.    Lack of Vocational Expert Testimony

Claimant claims that the ALJ failed to elicit vocational expert testimony determine the

effect of the assessed limitations on her occupational base.

Claimant argues that because the ALJ did not properly discredit her complaints of pain, obesity, and depression, the ALJ was required to elicit vocational expert testimony. This claim is without merit inasmuch as ALJ properly discredited the Claimant's complaints of a pain, obesity, and depression.

As discussed, the ALJ properly determined that Claimant retains the residual functional capacity to perform the full range of unskilled light work where she would be expected to understand, remember and carry out simple, routine and repetitive work involving simple 1 and 2 step instructions and non-detailed tasks, to maintain concentration and attention in 2-hour segments over an 8-hour period and to demonstrate adequate judgment and make adequate decisions.

Generally, when a claimant has a non-exertional impairment, such as pain, the ALJ must obtain testimony from a vocational expert in order to satisfy the Commissioner's burden at step five of the sequential evaluation process. Hall v. Chater, 62 F.3d 220, 224 (8th Cir. 1995). Where, however as here, the ALJ properly discredits the claimant's complaint of a non-exertional impairment, the ALJ is not required to consult with a vocational expert. Id.; Naber v. Shalala, 22 F.3d 186, 189 (8th Cir. 1994). As outlined above, the ALJ sufficiently discredited claimant's complaints of pain, depression, and obesity. Indeed, the ALJ noted that Claimant worked for years when she was obese. Thus, the ALJ committed no error in determining claimant not to be disabled without eliciting vocational expert testimony.

C.     Weight Given to Treating Doctors

Claimant contends that the ALJ failed to include the limitations suggested by two doctors,

Dr. Krasnoff and Dr. Ziaee, when formulating her RFC.

"A treating physician's opinion is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record." Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. §404.1527(d)(2) (alteration in original). "[W]hile a treating physician's opinion is generally entitled to substantial weight, such an opinion does not automatically control because the [ALJ] must evaluate the record as a whole." Wagner v. Astrue, 499 F.3d 842, 849 (8th Cir. 2007) (internal quotations omitted). Thus, "'an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record.'" Id. (quoting Prosch v. Apfel, 201 F.3d 1010, 1013-14 (8th Cir. 2000)).

Title 20 C.F.R. § 404.1527(d) list six factors to be evaluated when weighing opinions of treating physicians: (1) the examining relationship; (2) the treatment relationship, including the length of the relationship, the frequency of examination, and the nature and extent of the relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors, e.g., "the extent to which an acceptable medical source is familiar with the other information in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(1)-(6). Consideration of these factors supports the ALJ's decision not to give greater weight to the limitations imposed by Dr. Krasnoff and Dr. Ziaee.

As the ALJ acknowledged in her decision, Dr. Krasnoff was Claimant's treating physician. Dr. Krasnoff's treatment notes are brief and nearly illegible, but the notes show Dr. Krasnoff treated Claimant approximately seven times between February 2002 and February 2007 for

hypothyroidism and hypertension. (Tr. 175-81). On September 19, 2009, Dr. Krasnoff

completed a medical source statement on behalf of Claimant, but there no treatment notes dated

that day. (Tr. 214-18). Dr. Krasnoff included the diagnosis of hypertension, hypothyroidism,

degenerative joint disease, and severe weight problem and listed back and knee pain as her

symptoms. (Tr. 214). Dr. Krasnoff opined that Claimant's pain and other symptoms to be severe

enough to occasionally to frequently interfere with attention and concentration needed to perform

even simple work tasks. Dr. Krasnoff found that Claimant can walk/stand less than two hours and

sit about four hours in an eight-hour workday and would need to shift positions at will from

sitting, standing, or walking. Claimant would be expected to miss about four days of work each

month due to her impairments and/or treatment, and her symptoms and limitations have existed

since March 2007. (Tr. 218).

It is permissible for an ALJ to discount an assessment of a treating physician that consists

of conclusory statements. See Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010). See also

Martise v. Astrue, 641 F.3d 909, 926 (8th Cir. 2011) (affirming ALJ's decision to give treating

physician's medical source statement less weight when such was unsupported by medical

evidence, including his own treatment notes, and consisted of checkmarks); Clevenger v. S.S.A.,

567 F.3d 971, 975 (8th Cir. 2009) (affirming ALJ's decision not to follow opinion of treating

physician that was not corroborated by treatment notes). The ALJ noted that Dr. Krasnoff's "own

office notes and reports fail to reveal the type of significant clinical and laboratory abnormalities

one would reasonably expect to see if the claimant were in fact disabled." (Tr. 18). Indeed, as

noted by the ALJ, the limitations imposed were clearly based on Claimant's subjective reports and

not on any independent findings of Dr. Krasnoff. There are no treatment notes dated September

19, 2009 showing Dr. Krasnoff examined Claimant or completed any testing on that day, and none of the earlier treatment records contain any objective evidence of limitation of the degree set forth in the medical source statement. The ALJ opined that "[t]he treating physician apparently relied quite heavily on the subjective report of symptoms and limitations described by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported." (Tr. 18). The ALJ opined

> [t]he treating physician's own office notes and reports fail to reveal the type of significant clinical and laboratory abnormalities one would reasonably expect to see if the claimant were in fact disabled. The treating physician appears to rely upon reports of symptoms that are not reflected in the office notes or the medical records submitted from this physician. Although the treating physician does have a treating relationship with the claimant, the record reveals that actual treatment visits have been relatively infrequent. The courses of treatment pursued by the treating physician ... have not been consistent with what the course of treatment one would expect if the claimant were truly disabled in the manner reported.

(Tr. 18).

Moreover, the ALJ noted that Claimant previously reported significant activities of daily living including caring for her son. (Tr. 17). Significant daily activities may be inconsistent with claims of disabling pain. Claimant admitted having the ability not only to care for herself but also care for her son, a young child and driving him to school, without assistance except when her husband was home. (Tr. 17-18). See e.g. Brown v. Barnhart, 390 F.3d 535, 541 (8th Cir. 2004) (allegations of disability inconsistent with evidence that the claimant was primary care giver for a disabled individual). Claimant also reported fixing meals each day and fixing dinner can take one to two hours depending upon the meal prepared, vacuuming, and washing dishes while being seated. See e.g. Medhaug v. Astrue, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with

subject complaints of disabling pain). As discussed, the ALJ properly found Claimant's description of her limitations to not be credible. See Gates v. Astrue, 627 F.3d 1080, 1082 (8th Cir. 2010) (rejecting argument that ALJ erred in assessing claimant's impairments when medical opinion cited by claimant was "largely based" on her own statements).

Claimant contends that the ALJ failed to properly evaluate Dr. Ziaee's medical source statement and resulting mental limitations. The ALJ opined '[t]he fact that the claimant allegedly suffered from depression for many years but did not seek psychiatric treatment or counseling until the year of the hearing, detracts from the assertion that the symptoms of her depression have been ongoing and disabling." (Tr. 18).

Dr. Ziaee first treated Claimant on July 11, 2008. Claimant reported not having seen a doctor for psychiatric treatment since 1988 and taking Prozac 20mg for a year. Mental status examination showed Claimant to be anxious and sad. Dr. Ziaee included in her diagnosis depression and anxiety, obesity, hypertension, and hypothyroid. Dr. Ziaee increased Claimant's Prozac to 40mg. On August 8, 2008, Claimant reported the Prozac helping somewhat. Dr. Ziaee continued Claimant's medication regime of Prozac 40 mg. In a follow-up visit on September 19, 2008, Claimant reported being more frustrated by situations and experiencing stress about financial issues. Claimant tolerated her dosage increase and reported no side effects from the medication. Dr. Ziaee increased her Prozac dosage to 60mg.

After treating Claimant three times, Dr. Ziaee completed the Mental Impairment Questionnaire on September 29, 2008. Dr. Layla Ziaee indicated that Claimant was seriously limited in nearly all the categories, including her ability to meet competitive standards in the following areas: remembering work-like procedures, maintaining attention for a two hour

segment, performing a consistent pace without unreasonable number of rest periods, and dealing with normal work stress. With respect to functional limitations, Dr. Ziaee found Claimant to have moderate functional limitations the restriction of activities of daily living; difficulties in maintaining social functioning; difficulties in maintaining concentration, persistence or pace; and episodes of decomposition. Dr. Ziaee opined that Claimant's impairments or treatment would cause her to miss more than four days per month of work, and her impairment is expected to last at least twelve months.

At the outset the undersigned notes that the relationship between Claimant and Dr. Ziaee demonstrates that she was not a "treating physician" under the statute. Generally, an ALJ must address the weight given to a treating physician's opinion, even if the opinion is ultimately disregarded. See §§ 404.1512(e)(1), 416.912(e)(1). However, not all doctors that examine or treat a claimant are treating physicians under the regulations. See 20 C.F.R. § 404.1502. The regulations provide that a nontreating source is "a physician ... who has examined [the claimant] but does not have, or did not have an ongoing treatment relationship with you." Id. In addition, the ALJ has discretion to find whether a physician is a treating source based in part on whether the physician treated the claimant "only a few times or only after long intervals (e.g., twice a year)." Id. Since Dr. Ziaee did not first treat Claimant until shortly before the hearing, she only treated her three times, and her opinions are inconsistent of her treatment of Claimant, Dr. Ziaee's opinions should not be accorded great weight. See Randolph v. Barnhart, 386 F.3d 835, 840 (8th Cir. 2004) (finding doctor's letter not entitled to controlling weight as a medical opinion of treating source inasmuch as doctor had only met with Claimant on three prior occasions). Cf. 20 C.F.R. §§404.1527(d)(2)(i);416.927(d)(2)(I) ("Generally, the longer a treating source has treated

- 24 -

you and the more times you have been seen by a treating source, the more weight we will give to

the source's medical opinion.").

As noted by the ALJ,

For many years, the claimant's diagnosis of a mental impairment is based on her own reports of a mental impairment and symptoms to her family doctor. For years, the only treatment she sought were the medications prescribed by her family doctor. It was not until shortly before the hearing that she accepted a referral to a psychiatrist for analysis, diagnosis and appropriate treatment. This suggests that the claimant's alleged mental impairment has not been severe enough to warrant treatment beyond medication by her family physician.

(Tr. 13). During the hearing, the ALJ observed Claimant able to "provided a detailed medical

history including dates, physicians' names and other details. In addition, the claimant's

concentration was sufficient to follow the proceedings of her hearing with no apparent

difficulties." (Tr. 13).

A special technique is used to determine the severity of mental disorders. This technique

calls for rating the claimant's degree of limitations in four areas of functioning: activities of daily

living; social functioning; concentration, persistence, or pace; and episodes of decompensation.

20 C.F.R. 404.1520a(c)(3); see Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001) (holding that

while an ALJ is not limited to considering medical evidence of a mental impairment, the ALJ is

required to consider at least some supporting evidence from a professional). In making these

findings, the ALJ's decision "must show the significant history, including examination and

laboratory findings, and the functional limitations that were considered in reaching a conclusion

about the severity of the mental impairment(s)." 20 C.F.R. § 404.1520a(e)(4). The ALJ's

decision also must "include a specific finding as to the degree of limitation in each of the

functional areas described in [20 C.F.R. § 1520a(c)(3)]. Id. To the extent Claimant argues that

the ALJ failed to rate the degree of functional loss resulting from the alleged mental impairment, this argument is refuted by the ALJ's opinion, in which the ALJ found that at most Claimant has no episodes of decompensations, only mild restrictions in activities of daily living, and mild limitations in social functioning and concentration, persistence and pace. (Tr. 12-13). Further, the ALJ found that the record "demonstrates that the claimant can understand, remember and carry out simple, routine, and repetitive work involving simple 1 and 2 step instructions and non-detailed tasks. She can maintain concentration and attention in 2-hour segments over an 8-hour period." (Tr. 13).

Dr. Ziaee found Claimant to have a major depressive disorder and obesity and assessed her GAF to be 45 after seeing Claimant one time and on September 19, 2008 assessed her GAF to be 40. Dr. Ziaee completed a mental impairment questionnaire procured by her counsel based on her treatment of Claimant on three occasions, July 11, August 8, and September 19, 2008. The ALJ opined that a GAF of 40 "reflects some impairment in reality testing or communication, to the point that her speech is at time illogical" but Dr. Ziaee's treatment was limited in length and conservative. Dr. Ziaee continued Claimant's medication regime of Prozac and increased the dosage to 40 mg. but her treatment notes are devoid of mention of such severe symptoms. Indeed, no objective abnormalities were noted, only Claimant's reports of feeling sad and anxious. As noted by the ALJ, Claimant's failure to seek psychiatric treatment until after she applied for benefits detracts from the doctor's opinion. See Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000) (finding the absence of any evidence of ongoing psychiatric treatment or a deterioration of change in the claimant's mental capabilities disfavors a finding of disability). Moreover, the ALJ noted that Claimant previously reported significant activities of daily living including caring for

her son.  Significant daily activities may be inconsistent with claims of disabling pain.  Claimant

admitted having the ability not only to take care for herself but also care for her son.  See Brown

v. Barnhart, 390 F.3d 535, 541 (8th Cir. 2004) (allegations of disability inconsistent with evidence

that the claimant was primary care giver for a disabled individual).

The undersigned notes that Dr. Ziaee's mental impairment questionnaire is not supported

by objective clinical and laboratory diagnostic techniques and inconsistent with her own treatment

notes and the record as a whole.  In her treatment notes, Dr. Ziaee noted Claimant to be well-

dressed and groomed, but in the questionnaire, Dr. Ziaee found Claimant's ability to maintain

basic standards of neatness and cleanliness to be seriously limited.  Clevenger v. S.S.A., 567 F.3d

971, 975 (8th Cir. 2009 (affirming ALJ's decision not to follow opinion of treating physician that

was not corroborated by treatment notes).  "It is permissible for an ALJ to discount an opinion of

a treating physician that is inconsistent with the physician's clinical treatment notes."  Davidson v.

Astrue, 578 F.3d 838, 843 (8th Cir. 2009).  In the questionnaire, Dr. Ziaee indicated that

Claimant had decompensated two to three time but her treatment notes fail to document any

decompensation.  Dr. Ziaee's treatment notes are not consistent with her medical history or

course of treatment, or Claimant's daily activities.

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the

record as a whole.  Inasmuch as there is substantial evidence to support the ALJ's decision, this

Court may not reverse the decision merely because substantial evidence exists in the record that

would have supported a contrary outcome or because another court could have decided the case

differently.  Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001).  Accordingly, the decision of the

ALJ denying Claimant's claims for benefits should be affirmed.

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the final decision of

the Commissioner denying social security benefits be **AFFIRMED**.

Judgment shall be entered accordingly.

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE


Dated this  14th  day of March, 2012.